STATE OF IOWA v. JOHN W. KING, Appellant.

**Rape on Infant:** *Repetition of offense admissible in evidence.* On a prosecution for rape, the female being under age of consent, proof of repetition of the offense after the act charged is admissible.

*Election by state.* On a prosecution for rape, it appearing that more than one offense had been committed within 18 months

prior to the presentation of the indictment, it was error not to compel the state to elect on which offense it would rely.

CONSENT: *Assault and battery and assault.* On a prosecution for rape, prosecutrix having been under age, and consented, it was not error not to charge on assault and battery and simple assault.

EXAMINATION OF PROSECUTRIX BY PHYSICIAN: *Admissibility and value.* On a prosecution for rape a physician testified to having found the hymen of prosecutrix ruptured six weeks after the offense. *Held,* that the remoteness of the time of the examination bore on value of the testimony, but was no ground for its exclusion.

Witness: INFANCY: *Competency.* Code, section 4601, declares that every human being of sufficient capacity to understand the obligation of an oath is competent as a witness, except as otherwise declared. *Held,* that, where a child under 14 years of age is called as a witness, the preliminary inquiry should be directed solely to ascertaining whether sufficient capacity is possessed to understand the obligation of an oath, as no presumption prevails in favor of the competency of one under 14 years of age.

*Bearing of religious belief.* Code, section 4602, declares that facts which formerly caused the exclusion of testimony may be shown for the purpose of lessening credibility. *Held* that, while precepts of Chrisianity may be considered in measuring the intelligence of a minor offered as a witness, the extent of the appreciation of such teachings is not decisive.

*Instruction of such witness.* When a person of immature years is to be a witness, instruction is essential that he may know precisely what the law exacts as to his qualifications; but it is not so material when this is given,—whether shortly before the trial or during its progress.

COMPETENCY NOT SHOWN. On a prosecution for rape a child of 12 was prosecutrix. She stated that the attorney for the state had told her that if she held up her right hand before the court it meant she was to tell the truth, and would be punished if she did not, that she did not know anything about it, and did not know what the word "testimony" meant, though she had been told it meant what she said; that she had been told, if asked what an oath meant, to say it meant she should tell the truth. *Held,* that the witness' understanding of an oath was not shown.

*Appeal from Buena Vista District Court.*—HON. W. B. QUARTON, Judge.

WEDNESDAY, OCTOBER 8, 1902.

THE defendant was accused of having committed rape, and from judgment of conviction appeals.—*Reversed.*

*F. F. Faville* and *T. H. Chapman* for Appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

LADD, C. J.—When a child under 14 years of age is called as a witness, the preliminary inquiry should be directed solely to ascertaining whether sufficient capacity is possessed to understand the obligation of an oath. Above that age every person is presumed, until the contrary appears, to have common discretion and understanding. No presumption prevails in favor of the competency of one under 14 years of age. Anciently, a child of less than 9 years was conclusively presumed incapable, but all modern decisions seem to declare intelligence, and not age, the proper test. See *State v. Whittier,* 21 Me. 341 (38 Am. Dec. 272). Under our statute, "every human being of sufficient capacity to understand the obligation of an oath is competent as a witness except as otherwise declared." Section 4601, Code. Facts which formerly caused the exclusion of testimony are now shown for the purpose of lessening credibility. Section 4602. Intelligence, then, and not belief, nor the power of moral perception, is the test. *White v. Com.,* 96 Ky. 180 (28 S. W. Rep. 340); *Com. v. Carey,* 2 Brewst. 404. Treatment of knowledge of God and the elementary precepts of Christianity as controlling seems to rest, in part, at least on the old rule exacting faith as one of the necessary qualificatoins to give testimony. *Beason v. State,* 72 Ala. 191; *State v.*

*Michael*, 37 W. Va. 565 (16 S. E. Rep. 803, 19 L. R. A. 605); *State v. Belton*, 24 S. C. 185 (58 Am. Rep. 245); *State v. Washington*, 49 La. Ann. 1602 (22 South. Rep. 841, 42 L. R. A. 553). These matters may well be considered in measuring the minor's intelligence, for religious training in early childhood is the rule, rather than the exception, in this Christian land. Evidence of the extent of their appreciation may materially aid in estimating capacity, but it is not to be regarded as decisive. A child is to be no more rejected as a witness because of not having heard of God, the Devil, or the Saviour, than a person of maturity with such knowledge, but without belief in their existence. Ordinarily, the attention of a person of immature age is not directed to controversies calling for judicial investigation, and, when it does become necessary to use them as witnesses, instruction is essential that they may know precisely what the law exacts. It is not so material when this is given,—whether shortly before the trial or during its progress. It is material that the meaning and obligation of the oath be appreciated and comprehended. *State v. Todd*, 110 Iowa, 632. Indeed, causes have been held properly postponed for the purpose of thus instructing a witness. *Com. v. Lynes*, 142 Mass. 577 (8 N. E. Rep. 408, 56 Am. Rep. 709). Contra, *Taylor v. State*, 22 Tex. App. 529 (3 S. W. Rep. 753, 58 Am. Rep. 656). As capacity to understand, and not the character of the child's training, is the test, it can make little difference when instruction has been given. It is the better practice, however, to advise the proposed witness long enough before the trial to permit of reflection on the character and responsibility of the new situation in which he is to be placed. The decision as to capacity is primarily for the judge, though the evidence adduced may be considered by the jury, in connection with the age of the witness, his understanding and sense of moral accountability, in passing upon the value of the testimony subsequently

given on the merits. The court sees the witness, notices his manner, observes the apparent degree of intelligence and maturity of mind; and, as these matters cannot be photographed in the record, its decision will not be disturbed unless clearly erroneous. *Wheeler v. U. S.*, 159 U. S. 523 (16 Sup. Ct. Rep. 93, 40 L. Ed. 244); *State v. Juneau*, 88 Wis. 180 (59 N. W. Rep. 580, 24 L. R. A. 857, 43 Am. St. Rep. 877); *Com. v. Robinson*, 165 Mass. 427 (43 N. E. Rep. 121); *Davidson v. State*, 39 Tex. 129; *State v. Richie*, 28 La. Ann. 327 (26 Am. Rep. 100); *State v. Michael*, 37 W. Va. 569 (16 S. E. Rep. 803, 19 L. R. A. 605, and note.)

II. The prosecutrix was 12 years of age, and, though all she knew of the obligation of an oath had been told her by the attorney for the state, her comprehension was such as to fully vindicate the ruling of the court in receiving her testimony. Her sister was 10 years old. She stated that the attorney of the state had told her, a few minutes before being called, that if she held up her right hand before the court it meant that she was to tell the truth, and would be punished if she did not. She further said: "As a matter of fact, I don't know anything about it myself. I never was in court before. I don't know what the word 'testimony' means. * * * He told me a few minutes ago that it meant what I said. And he told me to tell you this. I do not know what the word 'evidence' means. He told me to tell you that an oath means that I shall tell the truth, and, if I didn't, the law can punish me. He didn't tell me how I would be punished. He simply told me, if the question was asked me, that is what I was to say, and stick to it. I don't know anything about it myself. I don't know what you mean by an 'obligation.'" It is very clear that this examination, while it indicated sufficient memory, had little bearing on her capacity to undertsand the obligation of an oath. She was able to repeat, with phonographic precision, what had been told her, but with no apparent

consciousness of the obligation that rested upon her by reason of having been sworn. Her understanding of the obligation of an oath was not touched, save wherein she declares her ignorance of the meaning of words. As she was but 10 years of age, there was no presumption of competency, and it was the duty of the court, when the witness was offered, and her competency questioned by proper objections, to ascertain whether she had sufficient intelligence to meet the requirements of the statute. *People v. Bernal*, 10 Cal. 66; *State v. Richie*, 28 La. Ann. 327 (26 Am. Rep. 100); *Carter v. State*, 63 Ala. 52 (35 Am. Rep. 4); *Brown v. State*, 2 Tex. App. 115; *State v. Whittier*, 21 Me. 341 (38 Am. Dec. 272); *Hughes v. Railway Co.*, 65 M ch. 10 (31 N. W. Rep. 603); *Blackwell v. State*, 11 Ind. 197. See *Gaines v. State*, 99 Ga. 703 (26 S. E. Rep. 760); *Murphy v. State*, 36 Tex. Cr. R. 24 (35 S. W. Rep. 174; 16 Am. & Eng. Enc. Law, 267. It may be the witness possessed the requisite capacity, but, if so, that fact should have been developed before receiving her testimony. ·

III. The prosecutrix testified that defendant first had intercourse with her at her home, and, over objection, that this was repeated a week or 10 days later in a grove near by. Thereupon, and also immediately after all the evidence was introduced, the defendant asked that the state be required to elect for which offense it would prosecute. These requests were denied. Error is assigned—First, to receiving evidence of the second offense; and, second, for not requiring the state to elect. Ordinarily, evidence of other offenses, distinct from that alleged, may not be received; but to this rule there are well-established exceptions. One class of these is explained in *State v. Brady*, 100 Iowa, 191. Another involves the relation and disposition of the parties toward each other. Thus, in prosecution for adultry and incest, familiarity, and even acts of incontinence, may be proven

after, as well as before, the commission of the offense charged. *State v. Briggs*, 68 Iowa, 416; *State v. More*, 115 Iowa, 178; *State v. Hurd*, 101 Iowa, 391. Should this rule be extended to cases of rape? In *People v. O'Sullivan*, 104 N. Y. 483 (10 N. E. Rep. 880, 58 Am. Rep. 530), evidence of an assault to commit rape four days previous was held admissible on the same principle that proof of previous threats or attempts to kill is admitted in a murder case. In *State v. Knapp* 45 N. H. 148, evidence of previous solicitations was admitted as tending to show a lustful intent towards the prosecutrix. In *People v. Abbott*, 97 Mich. 486 (56 N. W. Rep. 862, 37 Am. St. Rep. 360), proof of intercourse with prosecutrix under the age of consent was held proper for the purpose of showing the relation of the parties and the opportunity had of meeting her. See, also, *Strang v. People*, 24 Mich. 6. In *Hamilton v. State*, 36 Tex. Cr. App. 372 (37 S. W. Rep. 431), testimony of other intercourse with prosecutrix, who was under the age of consent, was admitted "to show the probability that the defendant committed the offense charged, and in corroboration of the testimony of the prosecutrix." In *State v. Robinson*, 32 Or. 43 (48 Pac. Rep. 357), evidence of other acts was received to "show relationship and familiarity of the parties, and as corroboration of the testimony of the prosecutrix concerning the particular act relied on for conviction." See *People v. Manahan*, 32 Cal. 68. It may be, as contended by appellant, that in most of the cases the proof related to acts preceding the particular offense charged, but in view of the purpose of such testimony to show the relationship and familiarity of the parties, and to corroborate the prosecutrix, we discover no good reason why evidence of acts subsequent to that charged, if in some way connectd with it, may not have as direct a bearing on those occurring before. The weight of authority authorizes similar proof in cases wherein adultery is charged, and, as evidence of other acts is received on

precisely the same principle in causes of this character, there is no apparent ground for rejecting such evidence in the one class and receiving it in the other. The disposition toward each other might be quite as potential between parties when the female, though under 15 years of age, voluntarily yields her consent to the intercourse, as in the case of adultry; and we think evidence of repetition of the act so soon after the first offense rightfully admitted. Had the intercourse been against her consent, a different question would arise. In *People v. Etter*, 81 Mich. 570 (45 N. W. Rep. 1109), the subsequent act was after the prosecutrix had attained the age of consent, and proof of it seems to have been rejected for that reason.

IV. But when one offense is charged, and the evidence tends to show that more than one has been committed within 18 months prior to the presentation of the indictment, the accused has the clear right to know upon which the state will rely for conviction. The object of this rule is: First, to enable the defendant to properly prepare for and make his defense; and, second to protect him by the individualization of the issue in case a second prosecution is brought against him. Wharton Pleading & Practice, section 294. In this author's work on Criminal Evidence (section 32) it is said: "When such offenses are introduced in evidence, the prosecution will be compelled to elect which it will rely on for a conviction." The right to election is expressly recognized in *State v. Hurd*, 101 Iowa, 391, where it was said: "While these different acts were proper as evidence in aid of the particular charge in the indictment, it was, of course, important that the specific act relied on should be known, that a conviction might not be a matter of choice between offenses, and to permit the defendant to properly meet the charge." To sustain the court's ruling by which prosecutrix was allowed to testify to intercourse in the grove, the state insists that it cannot be said that the jury did not

convict defendant of that act, instead of the offense alleged to have taken place in the house. This is precisely the difficulty with the ruling,—refusing to require an election. No one can tell of which offense the appellant stands condemned. For all that appears, one half the jury may have convicted him of the one crime, and the other half of the other. He had the clear right to be definitely informed upon which the state would demand a verdict of guilty. *Stockwell v. State*, 27 Ohio St. 563; *Simms v. State*, 10 Tex. App. 131; *Long v. State*, 56 Ind. 182 (26 Am. Rep. 19); *Hamilton v. State*, 36 Tex. Cr. App. 372 (37 S. W. Rep. 431); 1 Bishop Criminal Procedure, section 454 *et seq*.

V. The court submitted to the jury only the offense charged and that of an assault with intent to commit rape. All done was with the consent of prosecutrix, and, unless defendant was guilty of one of the above crimes, he was entitled to an acquittal. An omission to charge the jury concerning an offense of a lower degree, included in that alleged, of which there is no evidence, is not error. *State v. Casford*, 76 Iowa, 332; *State v. Beabout*, 100 Iowa, 162; *State v. Cater*, 100 Iowa, 504; *State v. Reasby*, 100 Iowa, 231. The case is clearly distinguishable from *State v. Wolf*, 112 Iowa, 458, as there the crime was said to have been accomplished by force and violence upon a female over the age of consent, and the parties were merely accused of aiding and abetting the real perpetrator. Here everything was acquiesced in by the prosecutrix, and, unless sexual intercourse was had or attempted, no crime whatever was committed.

VI. A doctor testified to an examination of prosecutrix, made six weeks after the alleged offense, when her hymen was found to have been ruptured. It is insisted that the time was too remote. This bears alone on the value of the testimony, and ought not to exclude it. *State v. McLaughlin*, 44 Iowa, 82; *State v.*

*Watson*, 81 Iowa, 380; *State v. Teipner*, 36 Minn. 535 (32 N. W. Rep. 678); *Com. v. Allen*, 135 Pa. St. 483 (19 Atl. Rep. 957).

VII.  The testimony of Doan and Johnson was properly received.  The instructions relating to corroboration are not subject to the criticism that they include the errors found in that condemned in *State v. Fountain*, 110 Iowa, 15.  Other errors argued are not likely to arise on another trial.  It is enough to say, without entering into detail, that, if the testimony of the sister of prosecutrix be considered, there was sufficient evidence to carry the case to the jury.—Reversed.